**MISSOURI HIGHWAY AND TRANS-
PORTATION COMMISSION,
Appellant,**

v.

**Ardeis H. MYERS, Jr., Personal
Representative, Estate of Flora
E. Myers, Respondent.**

No. 71286.

Supreme Court of Missouri,
En Banc.

Jan. 10, 1990.

Dissenting Opinion of Judge Higgins
March 13, 1990.

Rehearing Denied March 13, 1990.

Thomas Rynard, Missouri Highway & Transp. Com'n, Jefferson City, for appellant.

Robert Raymond, Claudia J. York, Kathleen A. Forsyth, Kansas City, for respondent.

RENDLEN, Justice.

This direct appeal is from the dismissal of the Missouri Highway and Transportation Commission's (Commission) petition to force a sale of real property inventoried in the estate of Flora Myers. The Commission had filed its petition as an alleged creditor of the estate, and among its contentions challenges the constitutionality of Missouri's probate nonclaim statute, § 473.360, RSMo 1978[1], bringing the cause within the ambit of our original appellate jurisdiction. Mo. Const. art. V, § 3.

The issues preserved for review include the following:

(1) Though the Commission failed to file a claim against the decedent's estate within the six-month limitation period of § 473.360, the personal representative is estopped from raising the time bar of the statute; (2) The Commission should be allowed to take advantage and be considered within the compass of a timely claim filed by one of its adversaries in these matters, the Commerce Bank of Kansas City (Bank), against Flora Myers' estate; (3) Missouri's nonclaim statute, § 473.360, is unconstitutional, as applied, in light of *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); and (4) The decision in *Pope*, though decided nearly nine years after the Commission's claim

was barred, should be applied retrospectively to the case *sub judice*.

When examining the record before us, one is beset with the disquieting impression that this litigation has about it an aura of life everlasting. *See State ex rel. State Highway Commission v. Morganstein (Morganstein I)*, 588 S.W.2d 472 (Mo. banc 1979); *State ex rel. State Highway Commission of Missouri v. Morganstein (Morganstein II)*, 649 S.W.2d 485 (Mo.App. 1983); *Commerce Bank of Kansas City v. Randall*, 675 S.W.2d 687 (Mo.App.1984); *State ex rel. Missouri Highway and Transportation Commission v. Morganstein (Morganstein III)*, 703 S.W.2d 894 (Mo. banc 1986); *State ex rel. State Highway Commission of Missouri v. Morganstein (Morganstein IV)*, 714 S.W.2d 576 (Mo.App.1986); and *Missouri Highway and Transportation Commission v. Commerce Bank of Kansas City*, 763 S.W.2d 172 (Mo.App.1988).

In July, 1970, the Commission instituted condemnation proceedings against land of Ardeis Myers, Sr. and Flora Myers and on February 2, 1971, the commissioners in condemnation assessed the landowners' damages at $387,000. That sum, deposited by the Highway Commission in the court registry on February 23, 1971, and ordered paid to the Myers along with seven other named parties[2], was promptly drawn down. Shortly thereafter the Commission filed exceptions naming the several defendants including Ardeis Myers, Sr. Though Ardeis, Sr. died January 20, 1974, the Commission did nothing to establish a claim against his estate other than moving to substitute his coexecutors as parties in the decedent's stead, more than ten months following the first publication of notice of letters testamentary. On May 24, 1976, the jury in the trial of exceptions set damages at $150,000, $237,000 less than the commissioners' award and the court entered judgment on the verdict, ordering defendants to repay the excess plus inter-

---

1. Although the 1978 version of the nonclaim statute is at issue, the current statute, § 473.360 RSMo Supp.1989, could be subject to the same attack. All statutory references are to RSMo 1978 unless indicated otherwise.

2. Except for Ardeis H. Myers, Jr. and Flora E. Myers (now deceased), these additionally named parties are not involved in this appeal nor necessary to the issues raised here.

est. From that judgment the defendants appealed. In *Morganstein I,* this Court held that the estate of Ardeis Myers, Sr. had been improperly included as a party by the trial court when the exceptions were tried and that time limitations barred the Commission's action against his estate. The six-month requirement of § 473.360 had long been held to be jurisdictional. *State ex rel. Whitaker v. Hall,* 358 S.W.2d 845 (Mo. banc 1962).

Lamentably, on March 8, 1979, during the pendency of *Morganstein I,* Flora Myers died. On April 20, her son, Ardeis Myers, Jr., in his capacity as trustee, filed here a Suggestion of the Death of Flora Myers, serving the Commission with copies thereof. On May 8, Ardeis, Jr. applied for letters testamentary, which issued May 15, 1979, and on May 18 the first Notice of Letters Testamentary was published as required by § 473.033.

On June 15, 1979, Ardeis, Jr. moved to substitute himself, in his capacity as executor, as a party in place of his mother. A copy of that motion was served on the Commission and on June 20, this Court ordered that the executor be substituted for Flora Myers in the pending appeal. Thus the Commission received actual notice of these essential facts from the executor and further was again advised thereof by the factual recitals contained in the Court's opinion handed down September 11, 1979, in *Morganstein I.* In sum, the publication of notice of letters gave the Commission at least constructive notice[3] of the administration on the decedent's estate. Actual notice of the fact of death and the date thereof, as well as the fact that an estate had been opened, the probate division of the court where this had occurred, the assigned number of the estate, and the name and identity of the executor, were all provided the Commission by the executor's motion to substitute.

Notwithstanding such notice, the months wore on and the Commission filed no claim or notice of substitution in the probate division of the Jackson County Circuit Court. On November 18, 1979, all claims not then filed or otherwise properly commenced in the estate of Flora Myers were barred.

On remand, judgment was entered September 14, 1983, in which the trial court found that the estate of Flora Myers was liable for the full amount of the excess condemnation award, which by then totaled $415,626.58. On January 11, 1984, the Commission sent a copy of that judgment to the probate division, and on March 29, 1988, the Commission filed its present petition praying an order of the probate division to sell real property of the Flora Myers estate. The executor responded with a motion to dismiss the petition for lack of standing, asserting as its basis the fact that the Commission had never properly filed or otherwise instituted a claim against the estate. Thereafter, on September 6, 1988, the Commission for the first time filed its claim, and on December 5 of that year, the probate division denied the Commission's request to file an amended petition and sustained the personal representative's motion to dismiss. This appeal followed.

■ There is no question that the Commission simply did not file a claim in the probate division of Jackson County within the time frame mandated by § 473.360. We have examined the former and current versions of § 473.360 and again conclude, as in *State ex rel. Whitaker v. Hall,* 358 S.W.2d 845, that the statute, which in its pertinent provisions remains unchanged, is mandatory and jurisdictional. In *Hall* at 849, the Court aptly described the statute's sweep as follows:

> The statutes here involved deal with and define in precise terms the limitations placed upon the jurisdiction of probate courts to allow claims not filed within the time and manner prescribed by law; they are mandatory and jurisdictional; so made for the purpose of expediting the liquidation and distribution of

---

3. The published notice provides constructive notice as a matter of law. If it can be shown that a creditor has in fact seen the published notice during the six-month period, this would constitute "actual notice" to such creditor.

estates of deceased persons and they may not be waived.

■ To avoid the consequence of its inaction, the Commission contends it should be permitted to proceed by virtue of § 473.363.1, RSMo 1978, which states:

1. Any action pending against any person at the time of his death, which, by law, survives against the executor or administrator, is considered a claim duly filed against his estate from the *time substitution of the executor or administrator for the deceased defendant, or motion therefor, is made and written notice thereof is filed in the probate division.* (Emphasis added.)

The purpose of this provision is twofold. It first explains the type of claims that may be considered within the purview of the section and next the manner in which actions pending against the decedent are deemed filed under the scheme prescribed in § 473.360, naming two requirements:

(1) The personal representative must be substituted for the deceased defendant in the pending action, or motion for such substitution must be filed in that action;

(2) Written notice of such substitution or motion must be filed in the probate division.

It is necessary that both requirements be met before a claim represented by an action pending at the decedent's death can be considered by the probate court. The second of these was never fulfilled and such is an indispensable jurisdictional prerequisite. The express language of 473.360.2, referencing § 473.363, reiterates that "unless *written notice* of actions instituted or revived under § 473.363 or § 473.367 is *filed in the probate division within six months* after the first published notice of letters, no recovery may be had in any such action on any judgment therein against the personal representative out of any assets [of the estate] (emphasis added)." Though § 473.363.2 tasks the personal representative within 90 days of his appointment to

notify the probate division of known pending actions, that subsection also specifically provides:

Nothing herein contained, however, shall be construed as extending, suspending, or in any other way affecting the period of nonclaim provided by section 473.360.

And further:

No executor or administrator shall have any liability for failing to give notice.

■ The burden to commence and prosecute claims against a decedent's estate remains the responsibility of a claimant. The general purpose of the nonclaim statutes is to provide relief against uncertainty, facilitating prompt settlement of decedents' estates. *Rabin v. Krogsdale,* 346 S.W.2d 58, 60 (Mo.1961). The claimant here failed to meet the mandatory jurisdictional requirements of §§ 473.363 and 473.360. The point is denied.

■ The Commission next argues the personal representative is estopped from asserting the statutes' bar as a defense, but this contention is without merit because the executor took no action which misled the Commission or made any statement within the time for filing claims, nor thereafter, upon which the Commission mistakenly relied to its detriment. Estoppel requires:

(1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement or act.

*Brown v. State Farm Mutual Automobile Insurance Company,* 776 S.W.2d 384, 386 (Mo. banc 1989), quoting *Mississippi–Fox Drainage Dist. v. Plenge,* 735 S.W.2d 748 (Mo.App.1987).

The Commission next concedes that strict compliance with § 473.360 has been held to be jurisdictional and under *State ex rel. Whitaker v. Hall,* 358 S.W.2d 845, may not be waived.[4] It maintains, however, that

---

**4.** If the doctrine of waiver were permitted, the Commission would be required to show the

personal representative by his acts or omissions

equitable jurisdiction has been conferred on probate courts by § 472.260 and that under the authority of § 473.403, "It [the probate court] is given the jurisdiction to hear disputes regarding claims and to decide whether a claim should be allowed." From this the Commission extrapolates that the probate court can decide the manner and form necessary for filing claims without careful conformance to statutory requirements. Further, in light of *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 the rule in *Whitaker* should be overturned or deemed inapplicable in the case at bar. First, § 473.403.1 offers appellant no relief. That section states no claimant is entitled to payment if his claim has not been duly filed and allowed by the court unless one of the exceptions appearing in § 473.403.2 and § 473.403.3 is present. The claim was not "duly filed" and § 473.403.2 deals first with claims filed or paid before the claim period has run and with written exceptions filed to the final settlement of the personal representative. Neither circumstance is present here, and § 473.403.3 dealing with claims for expenses of administration is similarly inapplicable in the case at bar. Quite simply, § 473.403 offers no support for the Commission's contention that the probate court may vary the statutory requirements of §§ 463.360 or 463.363.

▉ Turning to the contention that the Court in *Pope* has effectively nullified the "limitations on filing of claims" provisions of § 473.360, we read nothing in *Pope* that invalidates Missouri's nonclaim statute in the circumstances here. The Court did not declare a deprivation of due process as to creditors who have actual notice but fail to meet the statutes' time requirements. It must be recognized that *Pope* does extend prior notions of due process found in *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865

(1950), to time bar statutes in probate proceedings. In *Mullane*, the Court struck down a provision of a common trust fund statute that allowed notice publication as the sole means of informing known trust beneficiaries of an action that would settle their rights against the plaintiff trustee. In so doing, it held that due process, in any proceeding in which finality is to be accorded, required notice that is reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

In the most recent pronouncement on the notice requirements of Missouri's nonclaim statute, *Estate of Busch v. Ferrell–Duncan Clinic, Inc.*, 700 S.W.2d 86 (Mo. banc 1985), we held that notwithstanding the due process considerations announced in *Mullane*, publication notice to a creditor in probate met constitutional standards. While, as stated above, *Pope* applies the due process analysis of *Mullane* to probate nonclaim statutes, effectively vitiating *Busch*, a persuasive argument may be made that *Pope* should *not* be given retrospective application. However, we need not decide the question of prospective vis-a-vis retrospective effect of that decision. Instead, assuming *arguendo*, that the holding in *Pope should* be applied to revive a creditor's probate claim barred almost eight and one-half years ago, we find that the bar of the Missouri statute is not constitutionally infirm under the facts before us. In *Pope*, an Oklahoma two-month statute was applied to bar the claim of a hospital for services rendered the decedent, whose wife was the executrix administering the estate. The only notice to the hospital of the pending estate was constructive notice supplied by the publication in "some newspaper in the county once each week for *two* consecutive weeks (emphasis added)." *Id.* at 1342. However,

brought himself within the following parameters:

"Waiver" has been defined as an intentional relinquishment of a known right, on the question of which intention of the party charged with waiver is controlling and, if not shown by express declarations but implied by conduct, there must be a clear, unequivocal, and

decisive act of party showing such purpose, and so consistent with intention to waive that no other reasonable explanation is possible. *Bartleman v. Humphrey*, 441 S.W.2d 335, 343 (Mo.1969) (citing *Lucas Hunt Village Co. v. Klein*, 358 Mo. 1054, 218 S.W.2d 595 (banc 1949)).

critical factual differences distinguish the case at bar, placing it within the range of *Pope's* due process considerations. There the Court concluded that "actual notice" should be effected in some reasonable manner. If a creditor's identity were known or reasonably ascertainable by the executor, due process required that he be given notice by mail or such other means as might be reasonably available to ensure "actual notice." The Court did not declare the Oklahoma statute void, but instead remanded for further proceedings in light of the Court's decision. In the case before us, the notice of letters was published *four* consecutive weeks and the creditor received abundant "actual notice." Separate from the published notice, the Commission had been advised of the pending estate at several turns long before the six-month limitation period expired. These include, as previously discussed, the Suggestion of Death, the Motion to Substitute, the Order substituting the newly appointed executor for the deceased debtor, and on September 11, 1979, the slip opinion of this Court in *Morganstein I.* The flow of information provided the creditor constituted "actual notice" and the months of inaction thereafter go unexplained.

Because the Commission knew (1) it was a claimed creditor of Flora Myers, (2) that she had died, (3) that her estate had been opened and the court in which this occurred, (4) the number assigned to the estate, and (5) the name and identity of the executor five months before expiration of the claim period, the Commission is in effect asserting ignorance of the law as a defense, arguing that it did not know it was required to file a claim or notice of substitution within six months of the publication notice. This is *not* want of "knowledge of a fact" but a self-professed lack of understanding of the law's requirement, which could have been ascertained from a reading of the statutes and pertinent cases. Persons are conclusively presumed to know the law. *Poe v. Illinois Central R.R. Co.,* 339 Mo. 1025, 99 S.W.2d 82, 89 (1936); *Hartley Realty Co. v. Casady,* 332 S.W.2d 291, 295 (Mo.App.1960). The Commission had "actual notice" of the essential facts

and was represented by counsel at every stage in this protracted litigation. It defies credulity to suggest that the Commission, with its continual involvement in legal proceedings and its ready reliance on ever available in-house and special counsel, can claim it did not know and was somehow unable to ascertain the effect of the statutes limiting the time for and proper manner of processing its claim.

We conclude the Commission received sufficient actual, timely notice of the facts necessary for it to effectuate a claim against the estate and its charge of invalidity is denied.

■ Finally, the Commission contends it did in fact comply with § 473.363, because the first requisite of that section was met when the personal representative was substituted for the decedent shortly after the estate was opened. However, as noted above, neither the claimant nor the executor filed written notice thereof in the probate division as required by the statute. To fill this deficiency, the Commission turns to a claim of the Commerce Bank which had instituted a discrete and independent action to establish its position as a creditor on November 15, 1979. The Bank's claim was based on a letter of credit issued on behalf of the decedent and a promissory note signed by Flora E. Myers secured by deed of trust. For a discussion of these matters, see *Morganstein III* and *Highway and Transportation Commission v. Commerce Bank,* 763 S.W.2d 172 (Mo.App.1988). While it is difficult to ascertain the precise basis of the Bank's claim on the note and deed of trust (neither of which are included in the record), or the details of its relation to the letter of credit (which has been filed here), the latter refers to the Commission as beneficiary and Flora Myers as accountee. Nevertheless, nothing suggests the Bank is the agent empowered expressly or by implication to act on behalf of the executor, the decedent or the Commission to give the required statutory notice under § 473.363 for the Commission's benefit. Further, nothing indicates the document filed by the Bank was intended as a claim or notice of substitution

and, even if it were so intended, we cannot see how the Bank's claim was adequate to meet the requirement of § 473.363.1 and serve to perfect a competing claim of the Highway Commission. A reading of § 473.363.1 tells us a claim is deemed filed when "*substitution* of the executor or administrator for the deceased defendant ... is made and written notice *thereof* is filed in the probate court (emphasis added)." The written notice must in some fashion set forth that there has been a substitution of the executor or administrator for the deceased defendant in the pending lawsuit that the Commission was then pursuing, and this the Bank's claim did not do. The Commission, however, contends that the statute requires only written notice that there is a suit pending against the deceased. The Commission cites no authority for its assertion except to state that § 473.363.1 does not dictate the form to be used in giving written notice of the pending litigation to the probate court. The contention is not well taken.

The judgment of the Circuit Court, Probate Division, is affirmed.

ROBERTSON, COVINGTON and BILLINGS, JJ., and REINHARD, Special Judge, concur.

BLACKMAR, C.J., dissents in separate opinion filed.

HIGGINS, J., dissents and concurs in dissenting opinion of BLACKMAR, C.J.

HIGGINS, J., files dissenting opinion in which BLACKMAR, C.J., concurs.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.

BLACKMAR, Chief Justice, dissenting.

I do not quarrel with the authorities which hold that the nonclaim statute, § 473.360, RSMo 1986, should be strictly applied when necessary to serve the purpose. This case, however, involves a situation not covered by any case law cited in the principal opinion, or any which I can find. Here there was pending litigation in which the decedent, Flora Myers, was a party. At the time of her death she was trying to set aside a judgment which directed her to return a substantial part of a commissioners' award in a condemnation case, because the jury valued the condemned property far below the valuation placed on it by the commissioners. Her executor, on June 15, 1979, moved to substitute himself as executor in the pending action.

Had the executor not so moved, then the appellant Highway Commission would have been obliged to proceed in accordance with § 473.363.1, RSMo 1978, which requires a motion in the court in which the suit is pending and the filing of notice of the substitution in the probate division. Here, however, the executor assumed the initiative, no doubt to impose further resistance to the Highway Commission's attempts at securing refund. It is reasonable to hold that the executor, by moving to substitute himself, should be held to have relieved the Highway Commission of the need to file notice of the substitution in the probate court. It is consistent with the statutory language to hold that the executor should assume the burden of filing notice of the substitution he himself initiated.

Such a holding would not impair the efficacy of the nonclaim statutes. The probate division of the circuit court does not keep books on estates, except in the process of considering settlements filed by executors. The executor of course knew of the pendency of the Highway Commission's claim when he moved for the substitution and, by his motion, should be taken to have agreed to abide the final judgment in the action. The filing of notice of the substitution in the probate court serves no purpose. Such a requirement, in a case of this kind, is a purely technical one—a jumping through hoops.

There is another reason why the claim should not be held to be barred. *Morganstein II (State Highway Commission v. Morganstein*, 649 S.W.2d 485 (Mo.App. 1983)), expressly directed judgment in favor of the Highway Commission and against the estate of Flora E. Myers, in the full amount of the overpayment plus

interest. No reason is advanced as to why any defense based on the nonclaim statute could not and should not have been advanced in that proceeding. The estate's liability, therefore, is res judicata. It is familiar doctrine that defenses available at the time of final judgment are barred by the judgment and are not available later.

I agree that the Highway Commission had notice which makes the application of *Tulsa Professional Collection Services v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) unnecessary. By the same token, however, the Highway Commission should not be barred from its claim when the executor himself initiated the procedures for substituting himself for the decedent and was therefore fully informed.

It is unfortunate that the landowners and their successors are allowed to retain the grossly overvalued proceeds of the commissioners' award, when there is, at most, an omission brought about by a highly technical reading of the governing statutes.

I would reverse and remand for determination of the merits of the claim.

HIGGINS, Judge, dissenting.

I dissent and concur in the Dissenting Opinion of Blackmar, C.J., and write separately to express an additional view of this appeal.

The majority utilizes Missouri's probate non-claim statute, section 473.360, to affirm dismissal of appellant's petition to force a sale of certain real estate to satisfy a subsequently acquired judgment in favor of appellant against respondent Estate.

Flora Myers died March 8, 1979, during the course of long-standing condemnation litigation over the amount due the State from Mrs. Myers because of an excessive condemnation award. Letters testamentary issued to Ardeis Myers, Jr., (later substituted as Executor) May 15, 1979. The first Notice of Letters Testamentary was published May 18, 1979, and on November 18, 1979, probate claims against the Estate of Flora Myers were barred by the non-claim statute.

On February 15, 1983, while proceedings in the Estate of Flora Myers were pending, the Missouri Court of Appeals, Western District, determined that the Circuit Court of Jackson County (the trial court) "erroneously applied the standard articulated by the Supreme Court in this [condemnation] case by finding Mrs. Myers' Estate liable for only one-half of the excess [of the condemnation award] rather than the full amount." The adverse judgment was reversed and the cause was remanded "with directions to enter judgment for the State Highway Commission and against the Estate of Flora E. Myers in the amount of $237,000 plus interest from February 21, 1971." *See State ex rel. State Hwy. Com'n v. Morganstein [Morganstein II],* 649 S.W.2d 485, 490 (Mo.App.1983).

On remand, judgment was entered by the circuit court September 14, 1983, against the Estate of Flora Myers for the full amount of the excess condemnation award and interest which by then totaled $415,626.58. A copy of the judgment was delivered to the probate court January 11, 1984; the petition to enforce followed.

In these circumstances, I deem it inappropriate to say that the bar to *claims* of November 18, 1979, precludes collection of the *judgment* which came to life September 14, 1983, while the Estate proceedings remained pending.

Claims against estates of deceased persons, as that phrase is used in section 473.360 governing limitations on filing of claims against estates, refers to liabilities of the decedent which survived. *Higgins v. McElwee,* 680 S.W.2d 335 (Mo.App.1984). The liability of the Estate for the judgment sum could not be known until liquidated by the trial court by its judgment of September 14, 1983.

Traditionally, claims subject to the bar of section 473.360 are typified by those for personal services, groceries, clothing, merchandise, and the like; and they are for allowance by the probate court. Appellant's petition to sell real estate does not seek to establish this type claim; it seeks to enforce a judgment that in itself is for a

liquidated sum established by a trial division of the same circuit court.

In my view, the petition for enforcement of the judgment aforesaid is not subject to preclusion by the non-claim statute, § 473.360, as applied by the majority, but falls rather under the protection of section 473.370, RSMo, which deals specifically with "establishment of claims by judgment." It provides:

1. A person having a claim against an estate may establish the same by the judgment or decree of some court of record, in the ordinary course of proceeding, upon filing a copy of the judgment or decree in the probate division.

2. Except where notice of revival of an action or of institution of an action is filed as required by section 473.363 or 473.367, any judgment or decree is deemed filed within the meaning of section 473.360 as of the time a copy of the judgment or decree is filed in the probate division as required by this section.

For this reason and for the reasons expressed by the Chief Justice, I would reverse the judgment of dismissal and remand the cause for further consideration and determination of the appellant's petition to force sale of real estate on its merits.